UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE


| | | |
|---|---|---|
| GROVER LEWIS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 3:09-CV-316 |
| | ) | (VARLAN /SHIRLEY) |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION**

This case is before the undersigned pursuant to 28 U.S.C. § 636(b), Rule 72(b) of the Federal Rules of Civil Procedure, and the Rules of this Court for a report and recommendation regarding disposition by the District Court of Plaintiff's Motion for Summary Judgment [Doc. 9] and Defendant's Motion for Summary Judgment [Doc. 11]. Plaintiff Grover Lewis ("Plaintiff"), seeks judicial review of the decision of Administrative Law Judge ("ALJ") Denise Pasvantis denying him benefits, which was the final decision of Defendant Michael J. Astrue, Commissioner of Social Security ("the Commissioner").

On June 19, 2006, Plaintiff filed an application for disability insurance benefits ("DIB") alleging a period of disability which began on September 25, 2005. [Tr. 9]. After his application was denied initially and also denied upon reconsideration, Plaintiff requested a hearing. On August 28, 2008, a hearing was held before ALJ Denise Pasvantis to review the determination of Plaintiff's claim. [Tr. 20-54]. On December 30, 2008, the ALJ found that Plaintiff was not under a disability

from June 1, 2006, through the date of the decision. [Tr. 9-19]. On May 26, 2009, the Appeals Council denied Plaintiff's request for review; thus, the decision of the ALJ became the final decision of the Commissioner. [Tr. 1-3]. Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

**I.     ALJ FINDINGS**

The ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2010.

2. The claimant has not engaged in substantial gainful activity since September 25, 2005, the alleged onset date (20 CFR 404.1571 *et seq.*).

3. The claimant has the following combination of severe impairments: degenerative disc disease of the cervical spine with chronic back and neck pain; and depression (20 CFR 404.1521 *et seq.*).

4. The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours total in an 8-hour workday, sit without restriction, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds. He is limited to simple, routine, and repetitive tasks.

6. The claimant is unable to perform any past relevant work (20 CFR 404.1565).

7. The claimant was born on December 9, 1959, and was 45 years old, which is defined as a "younger individual," on the alleged disability onset date (20 CFR 404.1563).

8. The claimant has a high school education and is able to communicate in English (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See Social Security Rulings 82-41 and CFR Part 404, Subpart P, Appendix 2).

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 404.1569 and 404.1569a).

11. The claimant has not been under a disability, as defined in the Social Security Act, from September 25, 2006 through the date of this decision (20 CFR 404.1520(g)).

[Tr. 11-18].

## II. DISABILITY ELIGIBILITY

An individual is eligible for DIB if he is insured for DIB, has not attained retirement age, has filed an application for DIB, and is under a disability. 42 U.S.C. § 423(a)(1). "Disability" is the inability "[t]o engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A). An individual shall be determined to be under a disability only if his physical and/or mental impairments are of such severity that he is not only unable to do his previous work, but also cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work. 42 U.S.C. § 423(d)(2)(A).

Whether a DIB claimant is under a disability is evaluated by the Commissioner pursuant to a sequential five-step analysis summarized as follows:

> 1. If claimant is doing substantial gainful activity, he is not disabled.
>
> 2. If claimant is not doing substantial gainful activity, his impairment must be severe before he can be found to be disabled.
>
> 3. If claimant is not doing substantial gainful activity and is suffering from a severe impairment that has lasted or is expected to last for a continuous period of at least twelve months, and his impairment meets or equals a listed impairment, claimant is presumed disabled without further inquiry.
>
> 4. If claimant's impairment does not prevent him from doing his past relevant work, he is not disabled.
>
> 5. Even if claimant's impairment does prevent him from doing his past relevant work, if other work exists in the national economy that accommodates his residual functional capacity and vocational factors (age, education, skills, etc.), he is not disabled.

Walters v. Comm'r of Soc. Sec., 127 F.3d 525, 529 (6th Cir. 1997) (citing 20 C.F.R. § 404.1520).

A claimant bears the burden of proof at the first four steps. Id. The burden of proof shifts to the Commissioner at step five. Id. At step five, the Commissioner must prove that there is work available in the national economy that the claimant could perform. Her v. Comm'r of Soc. Sec., 203 F.3d 388, 391 (6th Cir. 1999) (citing Bowen v. Yuckert, 482 U.S. 137, 146 (1987)).

### III. STANDARD OF REVIEW

When reviewing the Commissioner's determination of whether an individual is disabled pursuant to 42 U.S.C. § 405(g), the Court is limited to determining "whether the ALJ applied the correct legal standards and whether the findings of the ALJ are supported by substantial evidence." Blakley v. Comm'r of Soc. Sec., 581 F.3d 399, 405 (6th Cir. 2009) (citing Key v. Callahan, 109 F.3d 270, 273 (6th Cir. 1997)). If the ALJ applied the correct legal standards and his findings are

supported by substantial evidence in the record, his decision is conclusive and must be affirmed. Warner v. Comm'r of Soc. Sec., 375 F.3d 387, 390 (6th Cir. 2004); 42 U.S.C. § 405(g). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Rogers v. Comm'r of Soc. Sec., 486 F.3d 234, 241 (6th Cir. 2007); Richardson v. Perales, 402 U.S. 389, 401 (1971) (citing Consol. Edison v. NLRB, 305 U.S. 197, 229 (1938)). It is immaterial whether the record may also possess substantial evidence to support a different conclusion from that reached by the ALJ, or whether the reviewing judge may have decided the case differently. Crisp v. Sec'y of Health & Human Servs., 790 F.2d 450, 453 n.4 (6th Cir. 1986). The substantial evidence standard is intended to create a "'zone of choice' within which the Commissioner can act, without the fear of court interference." Buxton v. Halter, 246 F.3d 762, 773 (6th Cir. 2001) (quoting Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986)). Therefore, the Court will not "try the case de novo, nor resolve conflicts in the evidence, nor decide questions of credibility." Walters, 127 F.3d at 528.

In addition to reviewing the ALJ's findings to determine whether they were supported by substantial evidence, the Court also reviews the ALJ's decision to determine whether it was reached through application of the correct legal standards and in accordance with the procedure mandated by the regulations and rulings[1] promulgated by the Commissioner. See Wilson v. Comm'r of Soc. Sec., 378 F.3d 541, 544 (6th Cir. 2004) ("Although substantial evidence otherwise supports the decision of the Commissioner in this case, reversal is required because the agency failed to follow

---

[1] See Blakley, 581 F.3d at 406 n.1 ("Although Social Security Rulings do not have the same force and effect as statutes or regulations, '[t]hey are binding on all components of the Social Security Administration' and 'represent precedent final opinions and orders and statements of policy' upon which we rely in adjudicating cases.") (quoting 20 C.F.R. § 402.35(b)).

its own procedural regulation, and the regulation was intended to protect applicants like [plaintiff]."); id. at 546 ("The general administrative law rule, after all, is for a reviewing court, in addition to whatever substantive factual or legal review is appropriate, to 'set aside agency action...found to be...without observance of procedure required by law.'") (quoting 5 U.S.C. § 706(2)(d) (2001)); cf. Rogers, 486 F.3d at 243 (holding that an ALJ's failure to follow a regulatory procedural requirement actually "denotes a lack of substantial evidence, even when the conclusion of the ALJ may be justified based upon the record"). "It is an elemental principal of administrative law that agencies are bound to follow their own regulations," and the Court therefore "cannot excuse the denial of a mandatory procedural protection . . . simply because there is sufficient evidence in the record" to support the Commissioner's ultimate disability determination. Wilson, 378 F.3d at 545-46. The Court may, however, decline to reverse and remand the Commissioner's determination if it finds that the ALJ's procedural errors were harmless.

An ALJ's violation of the Social Security Administration's procedural rules is harmless and will not result in reversible error "absent a showing that the claimant has been prejudiced on the merits or deprived of substantial rights because of the [ALJ]'s procedural lapses." Wilson, 378 F.3d at 546-47. Thus, an ALJ's procedural error is harmless if his ultimate decision was supported by substantial evidence *and* the error did not deprive the claimant of an important benefit or safeguard. See id. at 547 (holding that an ALJ's violation of the rules for evaluating the opinion of a treating medical source outlined in 20 C.F.R. § 404.1527(d) was a deprivation of an "important procedural safeguard" and therefore not a harmless error). If a procedural error is not harmless, then it warrants reversing and remanding the Commissioner's disability determination. Blakley, 581 F.3d at 409 (stating that a procedural error, notwithstanding the existence of substantial evidence to support the

ALJ's ultimate decision, requires that a reviewing court "reverse and remand unless the error is a harmless *de minimis* procedural violation").

On review, Plaintiff bears the burden of proving his entitlement to benefits. Boyes v. Sec'y. of Health & Human Servs., 46 F.3d 510, 512 (6th Cir. 1994) (citing Halsey v. Richardson, 441 F.2d 1230 (6th Cir. 1971)).

IV.   ANALYSIS

Plaintiff raises two arguments on appeal. First, Plaintiff contends that the ALJ's determination of his mental residual functional capacity ("RFC") was not supported by substantial evidence. [Doc. 10 at 8]. Plaintiff argues that the ALJ erred in determining his mental RFC because she failed to consider any medical opinions regarding Plaintiff's work-related mental limitations. [Doc. 10 at 8]. Plaintiff argues that because "the record contain[ed] no medical opinion whatsoever regarding the effect [his] depression would have on his ability to work, the ALJ should have ordered a consultative [mental] exam." [Doc. 10 at 10]. Plaintiff asserts that the ALJ's failure to obtain a medical opinion about his mental limitations forced her to improperly "render her own medical opinion." [Doc. 10 at 10]. Plaintiff concludes that because no medical opinions regarding his mental limitations were part of the record before the ALJ, the record was insufficient to support a decision on his DIB claim. [Doc. 10 at 10].

Plaintiff also contends that the ALJ's determination of his physical RFC was not supported by substantial evidence. [Doc. 10 at 11]. Plaintiff argues that "[i]n reaching her physical RFC conclusion, the ALJ erred [by] failing to accord proper weight to the opinion of Plaintiff's treating neurosurgeon, and [by] failing to explain her reasoning for rejecting this opinion." [Doc. 10 at 11].

Plaintiff states that his treating surgeon, Dr. John J. McCloskey, M.D., opined that he was (1) limited to light work, and (2) permanently *precluded from any overhead work*. [Doc. 10 at 12] (citing [Tr. 211-12]). Plaintiff argues that the ALJ erred by failing to incorporate the second limitation found by Dr. McCloskey in her conclusion about Plaintiff's RFC. [Doc. 10 at 12]. Plaintiff argues that this error caused the ALJ to make a physical RFC determination that was incorrect and unsupported by the record. Plaintiff concludes that the ALJ's finding that he has the physical RFC to "lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours total in an 8-hour workday, sit without restriction, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds," [Tr. 15], was not supported by substantial evidence.

In response, the Commissioner contends that the ALJ considered the entire record, and that substantial evidence supported her determination of Plaintiff's mental RFC. [Doc. 12 at 9]. The Commissioner argues that the ALJ's failure to order a consultative mental examination of Plaintiff cannot be characterized as an error because "the decision to obtain a consultative examination or ask for a medical expert to testify is a question left to the ALJ." [Doc. 12 at 9]. The Commissioner further argues that the ALJ's decision not to order a consultative mental examination was reasonable in light of the facts that Plaintiff's record contained only a "one-time suggestion" that he see a psychiatrist, and "none of Plaintiff's treating physicians ever assigned any specific limitations to his ability to mentally function" or opined that "Plaintiff had any mental limitations at all." [Doc. 12 at 9]. The Commissioner also argues that the ALJ properly considered Plaintiff's allegations and testimony, and that she appropriately based her mental RFC finding on this consideration. [Doc. 12 at 9]. The Commissioner concludes that the ALJ was "not required to call on a consultative

8

examiner or medical expert," and that the ALJ's finding that Plaintiff had the mental RFC to perform simple, routine, and repetitive tasks "reasonably accommodated all of Plaintiff's alleged mental impairments." [Doc. 12 at 10].

In response to Plaintiff's second contention, the Commissioner argues that the ALJ in fact "accepted the weight limits set out by Dr. McCloskey and explained why she did not accept Dr. McCloskey's restriction of no overhead lifting." [Doc. 12 at 11]. The Commissioner asserts that the ALJ did not reject Dr. McCloskey's opinion, and that she actually "noted that, with the exception of [a restriction to] no overhead lifting, Dr. McCloskey's opinion was consistent with the RFC finding and the rest of the evidence in the record." [Doc. 12 at 10]. The Commissioner argues that the ALJ adequately justified her decision not to incorporate Dr. McCloskey's opinion that Plaintiff was precluded from overhead lifting into her RFC finding by explaining that the opinion was contradicted by reports from Plaintiff's consultative examiners. [Doc. 12 at 10-11]. The Commissioner concludes that the ALJ properly considered all of the opinion evidence in the record, including the opinion of Dr. McCloskey.

The Court addresses Plaintiff's two contentions in turn.

### A. The ALJ's determination of Plaintiff's mental RFC

Plaintiff contends that the ALJ erred in determining his mental RFC because she failed to consider any medical opinions regarding Plaintiff's work-related mental limitations. [Doc. 10 at 8]. Plaintiff argues that because "the record contain[ed] no medical opinion whatsoever regarding the effect Plaintiff's depression would have on his ability to work, the ALJ should have ordered a consultative [mental] exam." [Doc. 10 at 10]. Plaintiff asserts that the ALJ's failure to obtain a

9

medical opinion about his mental limitations forced her to improperly "render her own medical opinion." [Doc. 10 at 10]. Plaintiff concludes that because no medical opinions regarding his mental limitations were part of the record before the ALJ, the record was insufficient to support a decision on his DIB claim. [Doc. 10 at 10].

The Commissioner responds that the ALJ's failure to order a consultative mental examination of Plaintiff cannot be characterized as an error because "the decision to obtain a consultative examination or ask for a medical expert to testify is a question left to the ALJ." [Doc. 12 at 9]. The Commissioner further argues that the ALJ's decision not to order a consultative mental examination was reasonable in light of the facts that Plaintiff's record contained only a "one-time suggestion" that he see a psychiatrist, and "none of Plaintiff's treating physicians ever assigned any specific limitations to his ability to mentally function" or opined that "Plaintiff had any mental limitations at all." [Doc. 12 at 9]. The Commissioner also argues that the ALJ properly considered Plaintiff's allegations and testimony, and that she appropriately based her mental RFC finding on this consideration. [Doc. 12 at 9]. The Commissioner concludes that the ALJ was "not required to call on a consultative examiner or medical expert," and that the ALJ's finding that Plaintiff had the mental RFC to perform simple, routine, and repetitive tasks "reasonably accommodated all of Plaintiff's alleged mental impairments." [Doc. 12 at 10].

Generally, a DIB claimant has to prove to the Social Security Administration ("SSA") that he is disabled in order to receive benefits. 20 C.F.R. § 404.1512(a); see Walters, 127 F.3d at 529. Therefore, the claimant "must bring to [the SSA's] attention everything that shows that [he is] disabled." 20 C.F.R. § 404.1512(a). "This means that [the claimant] must furnish medical and other evidence that [the SSA] can use to reach conclusions about [the claimant's] medical impairment(s)

10

and, if material to the determination of whether [the claimant is] disabled, its effect on [his] ability to work on a sustained basis." Id. The SSA will consider only impairments that the claimant says he has or about which it receives evidence. Id. "It is not unreasonable to require the claimant, who is in a better position to provide information about his own medical condition, to do so." Yuckert, 482 U.S. at 146 n.5 (1987).

Although a claimant has the burden of proving his entitlement to DIB, an ALJ "*may* ask for and consider the opinion of a medical or psychological expert concerning whether [the claimant's] impairment(s) could reasonably be expected to [the claimant's] alleged symptoms." 20 C.F.R. § 404.1529(b) (emphasis added). An ALJ may order a consultative examination for a claimant "when the evidence as a whole, both medical and nonmedical, is not sufficient to support a decision" on the claim. 20 C.F.R. § 404.1519a.

In this case, Plaintiff alleges that he suffers from depression that impacts his ability to work. Plaintiff further alleges that his depression, in combination with his physical impairments, renders him completely unable to perform any jobs. Plaintiff argues that, in addition to his own statements and self-reports, there are two pieces of evidence in the record that substantiate his allegations. First, Plaintiff points out that state disability determination services ("DDS") consultative physician Dr. Eva Misra, M.D., noted during her physical exam of Plaintiff that his intellectual functioning was abnormal. [Tr. 237]. Second, Plaintiff avers that his records from Cherokee Health System for the period from November 28, 2006, through May 30, 2008, "reflect treatment and medical [sic] for sleep disturbance, possible posttraumatic stress, depression, and anxiety." [Doc. 10 at 9] (citing [Tr. 301-22]). Plaintiff argues that this evidence sufficiently substantiated his allegation of depression to the point where the ALJ was at least required to order a consultative psychological examination.

11

The Court disagrees. The ALJ addressed Plaintiff's allegation of depression as follows:

> The claimant's treatment for mental health issues has likewise been entirely conservative in the form of psychotropic medications prescribed by his primary care physician. He has not required inpatient mental health care or been referred to a mental health provider. The claimant's treating physicians did not assign any specific limitations to his ability to function and did not opine that he had any mental limitations.

[Tr. 16]

The Court finds that the ALJ accurately summarized Plaintiff's record. The record contains no evidence besides Plaintiff's own statements and self-reports that substantiate Plaintiff's allegation of depression. Dr. Eva Misra's passing observation during a physical examination that Plaintiff had abnormal intellectual functioning cannot reasonably be understood to be evidence that Plaintiff suffers from severe depression. And Plaintiff's records from Cherokee do not indicate that he suffered from serious depression. In fact, those records indicate that Plaintiff's depression was not severe enough to be a treatment concern. See, e.g. [Tr. 305] (noting that Plaintiff was "pleasant," "well-developed," and only "mildly anxious"); [Tr. 306] (noting that Plaintiff was "pleasant," "talkative," and "in no acute distress"); [Tr. 312] ("The patient is alert and oriented times three."); [Tr. 312] ("We will also advise [Plaintiff] to schedule with behavioral health to discuss his issues of loss and possibly even posttraumatic stress.").

The ALJ could have reasonably found that the *total lack* of objective evidence of depression was sufficient to justify a decision that Plaintiff had no severe mental impairment. See 20 C.F.R. § 404.1519a. Instead, the ALJ credited Plaintiff's numerous statements and self-reports indicating that he suffered from depression. The ALJ found that Plaintiff suffered from depression, [Tr. 12], which limited him to the performance of simple, routine, and repetitive tasks, [Tr. 15]. The evidence

as a whole is sufficient to support this finding. Thus, the ALJ was not required to order a consultative psychological examination. See 20 C.F.R. § 404.1519a

The Court concludes that the ALJ's determination of Plaintiff's mental RFC was reasonable and supported by substantial evidence.

### B. The ALJ's consideration of Dr. McCloskey's opinion

Plaintiff contends that the ALJ's determination of his physical RFC was not supported by substantial evidence. [Doc. 10 at 11]. Plaintiff argues that "[i]n reaching her physical RFC conclusion, the ALJ erred [by] failing to accord proper weight to the opinion of Plaintiff's treating neurosurgeon, and [by] failing to explain her reasoning for rejecting this opinion." [Doc. 10 at 11]. Plaintiff states that his treating surgeon, Dr. John J. McCloskey, M.D., opined that Plaintiff was (1) limited to light work, and (2) precluded from any overhead work. [Doc. 10 at 12] (citing [Tr. 211-12]). Plaintiff argues that the ALJ erred by failing to incorporate the second limitation found by Dr. McCloskey in her conclusion about Plaintiff's RFC. [Doc. 10 at 12]. Plaintiff argues that this error caused the ALJ to make a physical RFC determination that was incorrect and unsupported by the record. Plaintiff concludes that the ALJ's finding that he has the physical RFC to "lift and/or carry twenty pounds occasionally and ten pounds frequently, stand and/or walk for six hours total in an 8-hour workday, sit without restriction, and occasionally balance, stoop, kneel, crouch, crawl, and climb ramps, stairs, ladders, ropes, and scaffolds," [Tr. 15], was not supported by substantial evidence.

In response, the Commissioner argues that the ALJ in fact "accepted the weight limits set out by Dr. McCloskey and explained why she did not accept Dr. McCloskey's restriction of no overhead

lifting." [Doc. 12 at 11]. The Commissioner asserts that the ALJ did not reject Dr. McCloskey's opinion, and that she actually "noted that, with the exception of [a restriction to] no overhead lifting, Dr. McCloskey's opinion was consistent with the RFC finding and the rest of the evidence in the record." [Doc. 12 at 10]. The Commissioner argues that the ALJ adequately justified her decision not to incorporate Dr. McCloskey's opinion that Plaintiff was precluded from overhead lifting into her RFC finding by explaining that the opinion was contradicted by reports from Plaintiff's consultative examiners. [Doc. 12 at 10-11]. The Commissioner concludes that the ALJ properly considered all of the opinion evidence in the record, including the opinion of Dr. McCloskey.

When determining a claimant's physical RFC, an ALJ is required to evaluate every medical opinion in the record, regardless of its source. 20 C.F.R. § 404.1527(d). A "medical opinion" is defined as a statement from a physician, psychologist, or "other acceptable medical source" that reflects "judgments about the nature and severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1527(a)(2). A medical source is considered a *treating* medical source if he has provided medical treatment or evaluation, and he has had an ongoing treatment relationship with the claimant "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation [that is] typical for the [treated condition(s)]." Blakley, 581 F.3d at 407 (quoting 20 C.F.R. § 404.1502).

An ALJ "must" give a medical opinion provided by a *treating* source controlling weight if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it is "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; see 20 C.F.R. § 404.1527(d)(2). If an ALJ decides not to give controlling weight to the medical opinion of a treating source, he is required to explain why in his narrative decision. 20 C.F.R. §

14

404.1527(d)(2); Shelman v. Heckler, 821 F.2d 316, 321 (6th Cir. 1987) (stating that while an ALJ is not bound by the opinions of a plaintiff's treating physicians, he is required to set forth some basis for rejecting these opinions). The ALJ is also required to provide in his narrative "good reasons" justifying the weight that he actually gave to a treating source's non-controlling opinion when reaching his decision. 20 C.F.R. § 404.1527(d)(2); Blakley, 581 F.3d at 401 (remanding a claim to the Commissioner "because the ALJ failed to give good reasons for discounting the opinions of [the claimant]'s treating physicians"). In order to determine the proper weight to give to a treating source's non-controlling opinion, the ALJ must conduct a six-factor analysis. See 20 C.F.R. § 404.1527(d)(2). The ALJ must consider (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship; (3) the supportability of and evidentiary basis for the opinion; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the source; and (6) anything else that tends to support or contradict the opinion. 20 C.F.R. § 404.1527(d)(2)-(6).

In this case, Plaintiff argues that the ALJ failed to accord proper weight to the opinion of Dr. John J. McCloskey, that was provided on May 19, 2005, in a "Neurosurgical Evaluation" [Tr. 211-12]. On the evaluation, Dr. McCloskey stated his opinion that Plaintiff's physical impairments permanently limit him to "light work, no overhead work, and no heavy strenuous lifting." [Tr. 212].

The ALJ considered Dr. McCloskey's opinion and discussed it in his narrative decision as follows: "In November 2005, John McCloskey, M.D., noted that the claimant was permanently limited to light work with no overhead work, and no heavy strenuous lifting."[2] [Tr. 13]. Because

---

[2] Although the ALJ accurately noted Dr. McCloskey's opinion here in part 3 of her narrative decision, it seems that she completely forgot about his opinion by the time she reached part 5–the part in which she explained her physical RFC finding. In part 5, the ALJ wrote that

15

Dr. McCloskey was a treating source, his opinion was entitled to receive controlling weight in the ALJ's RFC determination process if it was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and "not inconsistent with the other substantial evidence in the case record." Wilson, 378 F.3d at 544; [Tr. 17] (the ALJ acknowledges that Dr. McCloskey was Plaintiff's treating physician). The ALJ chose to give controlling weight to Dr. McCloskey's opinion that Plaintiff was permanently limited to light work. [Tr. 17] (stating that the RFC finding is supported by "the limitation to light work assigned by Dr. McCloskey"). But the ALJ rejected Dr. McCloskey's opinion that Plaintiff was precluded from all overhead work. [Tr. 17] (stating that the ALJ adopts Dr. McCloskey's opinion "with the exception of [the restriction to] no overhead lifting").

The ALJ justified his decision to reject Dr. McCloskey's opinion by explaining that it was inconsistent with "the State Agency medical consultant's opinion" and the examination report "provided by Dr. [Eva] Misra."[3] [Tr. 17]. The ALJ provided no other reasons for his decision.

The Court finds that the ALJ's rejection of Dr. McCloskey's opinion was unreasonable and not supported by substantial evidence. Dr. McCloskey's opinion was "well-supported by medically acceptable clinical and laboratory diagnostic techniques," and it was "not inconsistent with the other substantial evidence in the case record." See Wilson, 378 F.3d at 544. Accordingly, it was entitled

---

"no treating or examining physician has reported any limitations of function or assigned any restrictions of activity greater than a limitation to light work." [Tr. 16]. This is plainly incorrect. Dr. McCloskey stated that Plaintiff was limited to light work, but he also specifically stated that Plaintiff was precluded from all overhead work.

[3] The "State Agency medical consultant" to which the ALJ refers is Dr. Reeta Misra, M.D. Dr. Reeta Misra is not to be confused with DDS physician Dr. Eva Misra, M.D., who performed an all systems examination of Plaintiff on August 30, 2006. Dr. Eva Misra provided an examination report [Tr. 236-39]. Dr. Reeta Misra did not examine Plaintiff, but she provided a "Physical RFC Assessment" [Tr. 240-47] dated September 8, 2006, based on her review of Plaintiff's record.

to receive controlling weight.

As an initial matter, Dr. McCloskey's opinion was not inconsistent with the examination report [Tr. 236-39] provided by Dr. Eva Misra. Dr. Eva Misra simply did not address the question of whether Plaintiff had the ability to perform overhead work. See [Tr. 238] (stating that Plaintiff can lift and/or carry a maximum of 20 pounds for up to one third of an eight-hour workday, "stand and/or walk with normal breaks for a total of about six hours in an eight-hour workday," and "sit without restriction," but remaining silent on Plaintiff's ability to perform overhead work).

Dr. McCloskey's opinion *was* inconsistent with the "Physical RFC Assessment" [Tr. 240-47] provided by Dr. Reeta Misra. Dr. Reeta Misra opined that Plaintiff could climb ladders, ropes, or scaffolds occasionally, [Tr. 242], and that Plaintiff had no limitation to his ability to reach all directions, including overhead, [Tr. 243]. She bolstered this opinion by stating that there were "no treating/examining source conclusions about the claimant's limitations or restrictions which [were] significantly different from [her] findings." [Tr. 246]. This statement was plainly incorrect. Dr. Reeta Misra clearly did not carefully review Dr. McCloskey's May 19, 2005, "Neurosurgical Evaluation" [Tr. 211-12]. If she had, she would have noticed that his conclusion that Plaintiff was permanently precluded from performing overhead work was indeed "significantly different" from her findings. The assessment of a consultative, non-examining physician is only useful if it is based on a thorough review of a claimant's record. In this case, it is obvious that Dr. Reeta Misra did not undertake such a review.

Further, even if Dr. Reeta Misra had properly concluded that Plaintiff was not limited in his ability to perform overhead work, the inconsistency between this conclusion and Dr. McCloskey's opinion would not, by itself, be a valid reason for rejecting Dr. McCloskey's opinion. A treating

17

physician's opinion is entitled to controlling weight unless it is "inconsistent with the other *substantial* evidence in the case record." See Wilson, 378 F.3d at 544 (emphasis added). A treating source opinion cannot be rejected simply because it is inconsistent with the findings of one consultative, non-examining physician. In this case, "the other substantial evidence" in Plaintiff's record is consistent with Dr. McCloskey's opinion. Plaintiff's self-reports of an inability to perform overhead work are documented in the record, and there is nothing in the record to indicate that they are incredible. See, e.g., [Tr. 281] ("He complains of inability to perform overhead ADLs [activities of daily living].").

The Court concludes that the ALJ's only reason for rejecting Dr. McCloskey's opinion–that it was inconsistent with the report of Dr. Eva Misra and the assessment of Dr. Reeta Misra–was invalid. Accordingly, Dr. McCloskey's opinion should have been accorded controlling weight. The ALJ should have found that Plaintiff was precluded from performing all overhead work. Thus, her finding that Plaintiff has the ability to "lift and/or carry twenty pounds occasionally and ten pounds frequently," and climb "ladders, ropes, and scaffolds," [Tr. 15], was not supported by substantial evidence.

This case should be remanded to the Commissioner for proper determination of Plaintiff's physical RFC. On the basis of the record now before the Court, there is substantial evidence to support the ALJ's RFC finding if it is modified to read as follows:

> Plaintiff has the physical RFC to (1) lift and/or carry twenty pounds occasionally and ten pounds frequently, except that he is precluded from lifting and or carrying anything overhead, (2) stand and/or walk for six hours total in an 8-hour workday, (3) sit without restriction, and (4) occasionally balance, stoop, kneel, crouch, and crawl. Plaintiff is precluded from performing any overhead work or any work that involves reaching overhead.

If no new evidence has come to light, the Commissioner should find on remand that Plaintiff's RFC is as articulated above. The Commissioner should then move on to properly consider whether Plaintiff's RFC allows him to perform his past relevant work or work that is available in the national economy. See Walters, 127 F.3d at 529.

V. **CONCLUSION**

For the foregoing reasons, it is hereby **RECOMMENDED**[4] that the Commissioner's Motion for Summary Judgment **[Doc. 11]** be **DENIED**, and Plaintiff's Motion For Summary Judgment **[Doc. 9]** be **GRANTED** to the extent that it requests that this case be remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g) for a new hearing consistent with this report.

    Respectfully submitted,

      s/ C. Clifford Shirley, Jr.
    United States Magistrate Judge

---

[4] Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b), Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. Thomas v. Arn, 474 U.S. 140, 106 S. Ct. 466 (1985). The district court need not provide de novo review where objections to this report and recommendation are frivolous, conclusive, or general. Mira v. Marshall, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. Smith v. Detroit Fed'n of Teachers, 829 F.2d 1370 (6th Cir. 1987).